**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

September 1, 2022

Hon. Gregory H. Woods
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

Your Honor:

On October 2, 2020, New York City police officers stopped Jason Morgan's car and discovered a firearm with an obliterated serial number beneath the front passenger seat. On May 19, 2022, Jason Morgan pled guilty to possessing a firearm with an obliterated serial number in violation of Title 18, U.S.C. sec. 922(k). Mr. Morgan has been imprisoned since he entered his guilty plea. Prior to his remand, he had been on pre-trial release for about 18 months and complied with the conditions of his release.

Mr. Morgan entered his guilty plea pursuant to a written plea agreement in which the parties agreed that the sentencing guideline range for the offense is 46-57 months imprisonment based on an Adjusted Offense Level of 21 and a Criminal History Category of III. The Probation Office agrees with this guideline calculation and recommends a sentence of 46 months.

At the time of his arrest in 2020, Mr. Morgan had been on supervised release for over a year. For most of the time, he had been doing very well – attending school, working, and completing a substance use treatment program at the Counseling Services of the Eastern District of New York.

The advent of the Pandemic in March of 2020 derailed Mr. Morgan's progress. He could not complete his schooling and he lost his employment. PSR, pars. 63, 70.

Mr. Morgan fully accepts responsibility for his illegal possession of a firearm. However, in assessing an appropriate sanction, we urge the Court to consider Mr. Morgan's pre-and post-arrest conduct as evidence that he has the capacity to do better and lead a law-abiding life. We also ask the Court to take into account Mr. Morgan's very difficult upbringing – both his mother and stepfather were drug addicts who also sold drugs. A sentence modestly below the low end of

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 2
Southern District of New York

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

the 46-57 months would be sufficient, but not greater than necessary to achieve the statutory goals of sentencing. Title 18, U.S.C. sec. 3553(a).

## STATEMENT OF FACTS

### A Traumatic Childhood with Drug-Addicted Parents

Jason Morgan grew up under violent and chaotic conditions that have left him with deep emotional and psychological scars. Although his horrific childhood is not an excuse for his own criminal conduct, it is hard not to see a connection between the two.

Mr. Morgan is the only child of Frank Benjamin and Veronica Morgan. Jason was born in Brooklyn in 1980. He never had any relationship with his biological father who left Ms. Morgan shortly after Jason's birth. Mr. Benjamin made no further effort to maintain any financial or emotional connection with his son and Jason did not even know his name until he turned 15. PSR, par. 46.

When Jason was still an infant, his mother married Barrington Facey, and he was raised by the pair. Jason always considered Mr. Facey to be his "real" father. PSR, par. 47.

Jason's parents are not bad people and Jason had a good relationship with them. He does not recall any instances of abuse as a child. Nonetheless, Jason endured a traumatic upbringing that left him hurt and angry.

Both Jason's mother and stepfather were drug addicts who also sold drugs. Mr. Morgan notes that his mother used both crack cocaine and marijuana. Other than a few short-term jobs as a health care attendant, she never worked and primarily depended on public health benefits. Mr. Facey also was both a drug addict and a drug seller. PSR, par. 47.

Because of their drug addiction, Jason's parents had an unstable financial existence. As a consequence, Jason grew up in a bad section of the Bronx where he frequently witnessed violence and drug use. While Jason never went without food or clothing, there were many occasions on which utilities were cut off for non-payment.

### Adolescence and Early Substance Abuse

When Jason reached his early teen-age years, his life was already starting to fall apart. At the age of twelve, Jason started smoking marijuana. By the time he was fifteen, he was smoking up to five times a day. PSR, par. 59. Jason also started drinking at the age of fifteen and was shortly drinking beer many times a month. PSR, par. 60.

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 3
Southern District of New York

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

    Jason's drug and alcohol issues contributed to a poor school record. He attended Walton High School in the Bronx, but his grade point average was just 51 percent. PSR, par. 66. Jason dropped out of school in the eleventh grade. He subsequently failed a GED test, although he did finally get his GED while imprisoned in Massachusetts.

    As a young man, Mr. Morgan also experienced severe emotional problems. As noted above, he first learned of his biological father's identity at the age of fifteen. He reports that this made him "rebellious" because he was upset to learn that he did not have the same father as his maternal siblings. PSR, par. 47.

    In his late teens, both of Jason's parents were arrested and convicted for selling drugs. These convictions resulted in both his mother and father being deported to Jamaica. PSR, par. 49. Mr. Morgan was especially distressed over his stepfather's removal because he felt he no longer had a male role model in his life. He reports that he began to "look up" to men on the streets. PSAR, par. 50.

    Jason was in prison in Massachusetts for selling drugs at the time his parents were deported. Once he was released, he turned to his grandmother, Clintina Morgan, for financial and emotional support. Jason loves Ms. Morgan very much and describes her as a "Christian lady."

    Jason's grandmother is now 89 years old, but she still loves and supports her grandson. In a letter to the Court, she notes that when "I was living on my own he was a great help to me. He took me to my doctors' appointments, he helped me with household chores, made sure I took my medications on time, and he would sit and talk with me about life." **Exhibit A.** Although she knows he had made mistakes, Ms. Morgan hopes that the Court "will take into account all the goods things he has done and show leniency.

    **Criminal History**

    Almost inevitably, the combination of drug-addicted parents, his own drug and alcohol issues, and too much exposure to drugs and violence, led Mr. Morgan to begin committing crimes himself. At the age of 18, Mr. Morgan was arrested for participating in a crack cocaine sale. He was subsequently adjudicated a youthful offender and sentenced to five years of probation. PSR, par. 31.

    The unhappy details of Mr. Morgan's criminal history are set forth in the Presentence Report at paragraphs 32-36. Essentially, Mr. Morgan's crimes have involved drug sales and weapons possession.

    Mr. Morgan's most serious criminal conviction was sustained in 2009 when he pled guilty in the Southern District of New York to conspiring to distribute crack cocaine. According

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 4
Southern District of New York

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

to the PSR, Mr. Morgan was alleged to have been the leader of a group that distributed between 150 and 500 grams of crack. PSR, par. 36. Mr. Morgan was initially sentenced in 2010 to 180 months for this crime. In 2019, after he had been in prison for about 10 years, he was resentenced to time served with four years of supervised release under the provisions of the First Step Act. While incarcerated, Mr. Morgan completed many educational and training programs. PSR, par. 36.

### Offense Conduct

Mr. Morgan began serving his supervised release term for his 2009 conviction in August of 2019. At first, he did very well. He found employment as a maintenance worker and began taking courses in electrical engineering at the Lincoln Technical School in Union, New Jersey. PSR, pars. 70, 63.

By October of 2020, however, Mr. Morgan's life was not going as smoothly. The Pandemic resulted in him both losing his job and stopping his educational pursuits.

On the evening of October 2, 2020, Mr. Morgan was driving a Mercedes Benz that belonged to a friend when police officer stopped the vehicle because it had illegally tinted windows. When the officers approached the vehicle, they smelled marijuana which was still illegal in New York. The police officers asked Mr. Morgan to get out his car and then searched the vehicle.

Mr. Morgan was calm and polite during the search. He was placed under arrest when the police discovered a firearm under the rear passenger seat. The police also recovered a small amount of marijuana consistent with personal use. The firearm had an obliterated serial number. PSR, par 8-10.

Mr. Morgan was initially charged in state court with possession of a weapon. Those charges were dropped after a Grand Jury declined to indict him.

The gun recovered from Mr. Morgan's car was eventually tested for DNA. A swab taken from the gun matched Mr. Morgan's DNA. PSR, 11. In July of 2021, Mr. Morgan was charged in federal court with being a felon in possession of a firearm.

### Good Conduct while on Pre-Trial Release and the Support of Loved Ones.

Mr. Morgan self-surrendered on the instant case on July 7, 2021. He was released on bail that included conditions of location monitoring and home detention. Other than testing positive for marijuana on two occasions, Mr. Morgan obeyed all the restrictions on his liberty up to the time he was remanded. The PSR notes that "the defendant remained in compliance with all his

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 5
Southern District of New York

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

other bail conditions and maintained full-time employment the majority of the time during which he was out on bail." PSR, par. 5.

Over the last several years, Mr. Morgan has also been involved in a sustaining relationship with Leticia Campbell. Ms. Campbell works in a hair salon and has three children, ages 5, 8, and 13. Ms. Campbell has very positive things to say about Mr. Morgan. In an interview with the Probation Office, she describes Mr. Morgan as a "loving person" who was very helpful taking care of her children. PSR, par. 53. Ms. Campbell has continued to support Mr. Morgan since his remand, speaking to him daily over the telephone. PSR, par. 53.

Mr. Morgan also has the support of family members. As discussed above, his grandmother, Clintina Morgan is full of praise for her grandson. Mr. Morgan's cousin, Latoya Burton, also writes with "great enthusiasm" in his support. She states that he is a "good guy, he stays employed, a father, family oriented and has great community ties." **Exhibit B.**

**Plea and Sentencing Guideline Calculations**

On May 19, 2022, Mr. Morgan entered a plea of guilty to a superseding Information that charged with possession of a firearm with an obliterated serial number in violation of Title 18, U.S.C. sec. 922(k). The maximum penalty for this offense is five years.

Mr. Morgan pled guilty pursuant to a plea agreement that contains the following calculations.

The base offense level is 20 because Mr. Morgan committed the instant offense following a conviction for a drug trafficking offense. U.S.S.G. sec. 2K2.1. There is a four-level increase in the Offense Level because the firearm had an obliterated serial number. U.S.S.G. sec. 2K2.1(b)(4)(B). The offense level is reduced by three levels because Mr. Morgan timely accepted responsibility for his conduct. U.S.S.G. secs. 3E1.1(a) and (b). The total Adjusted Offense Level is 21.

Mr. Morgan has five Criminal History points, placing him in Criminal History Category III. He receives 3 points for his 2010 conviction for Conspiracy to Distribute Crack Cocaine. He is assessed an additional 2 Criminal History points, pursuant to U.S.S.G. sec 4A1.1(d) because he committed the instant offense while on Supervised Release.

An Adjusted Offense Level of 21 and a Criminal History Category of III yields a sentencing guideline range of 46-57 months. The Probation Office agrees with these calculations. PSR, par. 78.

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 6
Southern District of New York

Re: **United States v. Jason Morgan**
   **21 Cr. 460 (GHW)**

## ARGUMENT

### A SENTENCE OF LESS THAN 46 MONTHS IS WARRANTED BASED ON MR. MORGAN'S PERSONAL HISTORY AND CHARACTERISTICS AND THE CIRCUMSTANCES OF THE OFFENSE

Jason Morgan faces a serious penalty for having been found in possession of a gun with a defaced serial number. The harsh guideline range of 46-57 months reflects the gravity of the misconduct. Mr. Morgan knows that what he did was unequivocally wrong and merits a substantial punishment.

There are, however, mitigating factors that warrant a sentence somewhat below the sentencing guideline range. Mr. Morgan has shown that he has both the desire and the ability to lead a productive and crime-free life. When he was released from prison in 2019, Mr. Morgan actively pursued his rehabilitation. He worked, went to school, and completed a substance abuse treatment program. Had it not been for the Pandemic, it seems likely that he would have continued on this positive path.

Mr. Morgan's behavior after he was charged in the instant case also augurs well for the future. For almost a year, he was able to honor quite restrictive conditions of release that included home detention and location monitoring. There is no suggestion that he reverted to criminal behavior or otherwise tried to evade the terms of his release.

Mr. Morgan's very difficult upbringing is another factor that favors a slightly lower sentence. Obviously, a traumatic childhood and adolescence does not justify possessing an illegal gun as an adult. At the same time, however, it is equally true that having two parents who were drug addicts and drug sellers left Mr. Morgan substantially more vulnerable to falling into criminal behavior.

In fashioning an appropriate sentence, the Court may also want to consider the extremely harsh conditions Mr. Morgan has been suffering since he was remanded this past May. As the Court must be aware, the Metropolitan Detention Center is a very dysfunctional institution. Violence is rampant and inmates are subject to frequent lockdowns. There are few opportunities for education or other programs. It is fair to say that time at the MDC is much more onerous than prison time served in most BOP facilities.

Finally, the letters of support on behalf of Mr. Morgan and the favorable comments of his girlfriend, Leticia Campbell, are a reason for a lower sentence. Despite his mistakes, it is apparent that Mr. Morgan has acted in a way that has earned him the respect and love of his family.

Hon. Gregory H. Woods  September 1, 2022
United States District Judge  Page 7
Southern District of New York

Re: **United States v. Jason Morgan**
    **21 Cr. 460 (GHW)**

    The circumstances of the offense also do not call for the harshest possible sentence. There has been no suggestion that Mr. Morgan had ever used the gun or that he was committing any other crimes.

    In short, there are compelling reasons to vary downward from the 46-57 month guideline range. Given Mr. Morgan's personal history and characteristics and the circumstances leading up to the offense, a sentence of less than 46 months would be sufficient punishment.

## CONCLUSION

    For the foregoing reasons, a sentence somewhat below 46 months should be imposed.

    Respectfully submitted,

    Mark B. Gombiner
    Attorney for Jason Morgan

CC:  AUSA Brandon Harper